IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD ANTHONY STEHLIN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 CV 3455 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | Magistrate Judge Gilbert |
| Commissioner, Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Donald Stehlin ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's application for disability insurance benefits under Title II of the Social Security Act. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1. [ECF No. 6.] The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [ECF Nos. 25, 35.] For the reasons discussed below, Claimant's motion for summary judgment is denied, and the Commissioner's motion is granted. The decision of the Commissioner is affirmed.

## I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits on May 8, 2013, alleging a disability onset date of March 28, 2011. (R. 58.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (*Id.* at 66, 77, 92.)

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

Claimant appeared and testified before an Administrative Law Judge (the "ALJ") on September 10, 2014. (*Id.* at 24-57.) A vocational expert, Stephen Sprauer, also testified at the hearing. (*Id.*)

On November 12, 2014, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that he was not disabled under the Social Security Act. (R. 10-22.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 § C.F.R. 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date of March 28, 2011. (R. 12.) At step two, the ALJ found that Claimant had the severe impairment of degenerative disc disease. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 § C.F.R. 404.1520.) (*Id.* at 13.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work with the following limitations: Claimant can never climb ladders, ropes, or scaffolds; can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl and twist at the waist. (R. 14-15.) Based on this RFC, the ALJ determined at step four that Claimant is capable of performing past relevant work as a landscape supervisor. (R. 18.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (*Id.*)

On December 10, 2014, Claimant sought review of the ALJ's decision. (R. 5-6.) On January 21, 2016, the Social Security Appeals Council denied the request for review. (*Id.* at 1.) The ALJ's decision became the final decision of the Commissioner. (*Id.*) *See also Nelms v.*

*Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining

whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. ANALYSIS

Claimant presents three issues for review. First, Claimant argues that the ALJ's conclusion at step three was not supported by substantial evidence. (Pl.'s Mem. at 6.) Second, Claimant contends that the ALJ erred in determining Claimant's RFC. (*Id.* at 9.) Finally, Claimant argues that the ALJ erred in assessing the credibility of Claimant's testimony and allegations. (*Id.* at 13.)

### A. The ALJ's Step Three Finding Is Supported by Substantial Evidence

Claimant argues that the ALJ's step three analysis is erroneous (1) because it is perfunctory; and (2) because it fails to undertake an equivalence analysis. The Court addresses each argument in turn.

#### 1. The ALJ's step three analysis is not perfunctory

At step three in the sequential evaluation process, an ALJ must determine whether a claimant's impairment meets or medically equals one of the impairments found within the regulatory listings. 20 C.F.R. § 404.1520(a)(4)(iii), 20 C.F.R. Pt. 404, Subpt. P, App. 1. If so— and if the impairment has lasted or is expected to last for a continuous period of at least twelve months—the claimant is presumed to be "disabled." *See Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1509 ("We call this [twelve-month condition] the duration requirement."). A claimant "has the burden of showing that his impairments meet a listing" and "must show that his impairments satisfy all of the various

criteria specified in the listing." *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006). Nevertheless, when the ALJ fails to mention the specific listing she is considering and only provides "perfunctory analysis," remand may be required. *See id.* at 583 (quoting *Barnett,* 381 F.3d at 668); *see also Rice v. Barnhart,* 384 F.3d 363, 369–70 (7th Cir. 2004) ("We have recently held that where an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required.").

At issue in this case is Listing 1.04 which states:

1.04 Disorders of the spine ... resulting in compromise of a nerve root ... or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Here, the ALJ clearly identified the specific listing she considered, articulated the conditions required under Listing 1.04, and explained that she found no evidence of the conditions. (R. 13-14.) Specifically, the ALJ found "[t]he evidence does not support . . . nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, and manifested by chronic pain and weakness, with an inability to ambulate effectively." (R. 13.)

Claimant argues that the ALJ's analysis was perfunctory because she failed to consider medical evidence particularly with regard to Listing 1.04(C) of lumbar stenosis and degenerative disc disease, possible thoracic spinal stenosis and cervical spinal stenosis, joint space narrowing of the lumbar spine, retrolisthesis and an annual tear of the spinal cord, disc herniation and numbness and tingling radiating to the lower extremities, bilaterally. (Pl.'s Mem. at 7, citing R. 259, 265, 272.) Contrary to Claimant's assertion, the ALJ discussed all of the progress notes cited by Claimant, demonstrating that she considered that medical evidence. For instance, the ALJ devoted a paragraph to the progress note referenced by Claimant dated December 1, 2011 as an explanation for why Claimant did not meet all of the criteria of Listing 1.04:

> On December 1, 2011, the claimant had a full range of motion of the hips bilaterally, and straight leg raising was nonprovocative bilaterally in the seated position. He was able to heel and toe walk with good strength and coordination, and he had 5/5/ motor strength in all four extremities. Sensation was intact over the L2 through S1 dermatomes in the lower extremities, deep tendon reflexes were symmetrically reactive bilaterally and brisk in the upper and lower extremities, and his toes were downgoing on plantar stimulation.

(R. 14, citing R. 259.)

Likewise, the ALJ considered the MRI dated April 2, 2012, stating, "[a]lthough spinal arachnoiditis and myelopathy of the lumbar spine were considered, imaging was negative for those conditions." (R. 14, citing R. 265.) The ALJ also discussed this evidence in detail at step two stating, "[a]n April 2012 repeat MRI of the lumbar spine revealed that the lumbar vertebral body heights were well maintained, there was some disc space narrowing and disc desiccation with retrolisthesis at L5 on S1 but no significant spinal stenosis and no evidence of arachnoiditis." (R. 13, citing R. 265.)

The Seventh Circuit notes that "it is proper to read the ALJ's decision as a whole;" and that "it would be a needless formality to have the ALJ repeat substantially similar factual

analyses" in different parts of her decision. *Rice*, 384 F.3d at 370 n.5. As the Commissioner correctly states, "[n]one of the evidence to which [Claimant] points establishes that he met all of the elements of listing 1.04(C)." (Def.'s Mem. at 4.) Accordingly, Claimant has not meet his burden to "show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo,* 458 F.3d at 583.

Next, Claimant faults the ALJ for not properly evaluating Claimant's inability to ambulate effectively, one of the necessary elements of Listing 1.04(C). (Pl.'s Mem. at 7-8.) The inability to ambulate effectively is defined in section 1.00B2b as "an extreme limitation in the ability to walk . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404. Subpt. P. App. 1 § 1.00B2b. The Listing goes on to provide examples of ineffective ambulation, including: the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Id.*

Claimant asserts that "the ALJ did not consider the fact that Listing 110(B)(2)(b)(2) provides a non-exhaustive list of examples of ineffective ambulation." (Pl.'s Mem. at 7, citing *Moss v. Astrue,* 555 F.3d 556, 562-563 (7th Cir.2009)). Specifically, Claimant argues that the ALJ erred by not addressing a February 2014 Physical RFC statement from his primary care physician, John Jay Virchow, M.D., indicating that Claimant could not walk one city block or more without rest or severe pain, could not walk one block or more on rough or uneven ground, and could not climb steps without the use of a handrail at a reasonable pace. (Pl.'s Mem. at 7-8, citing R. 451.)

As discussed below, the Court does not agree. The ALJ articulated a number of valid reasons for giving "no significant weight to Dr. Virchow's physical [RFC] assessment dated February 1, 2014." (R. 17.) Namely, Dr. Virchow is "a primary care physician, and not an orthopedic specialist," "[n]o treating orthopedic specialist has opined that the claimant has such dramatic limitations," "these restrictions are not consistent with the abilities and limitations that were demonstrated during the [Functional Capacity Evaluation (FCE)]," and his opinion is "contradictory and not supported by his own progress notes." (*Id.*) The Court is not persuaded that the ALJ erred in discounting the treating physician's opinion because he is not a specialist particularly when, as in this case, that opinion is contrary to the treating physician's own notes, and there is no specialist who has opined as to those limitations. *See Elder v. Astrue,* 529 F.3d 408, 414–16 (7th Cir. 2008) (finding that ALJ properly discounted treating physician's opinion because he was not a specialist and failed to conduct a thorough examination to substantiate his opinion); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004) (finding an ALJ may discount a treating physician's opinion if the opinion "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability") (internal quotations and citations omitted). Also, the ALJ was not required to address evidence that she reasonably dismissed in another portion of her opinion. *See Rice,* 384 F.3d at 370 n.5; *Johnson v. Apfel,* 189 F. 3d 561, 564 (7th Cir. 1999) ("[W]e give the opinion a commonsensical reading rather than nitpicking at it.").

Moreover, the ALJ thoroughly addressed the various indications of Claimant's ability to ambulate effectively, stating "[t]reatment notes throughout the record from various treating and examining physicians reflect that the claimant has been able to ambulate effectively." (R. 14.)

The ALJ identified the following positive indications of Claimant's ability to ambulate from the medical records: an ability to walk 50 feet without support, an ability to heel and toe walk bilaterally with good strength and coordination; 5/5 motor strength in all four extremities; an ability to walk with tandem gait and on his heels and toes; normal reciprocal heel to toe gait; and no leg weakness or falls. (R. 14, citing R. 257, 259, 289, 311-12, 339, 361, 379.) The ALJ also noted that "there was nothing in [Claimant's] presentation or in his testimony to suggest that he was incapable of walking further than 50 feet," and that Claimant "told Dr. Karri that he could do his daily chores slowly, he could drive, and he could handle objects normally." (R. 14.) Contrary to Claimant's assertion, the ALJ's analysis was not perfunctory, and she pointed to multiple sources of evidence to support her conclusion that Claimant's impairments did not meet or medically equal a listing. As such, Claimant has not shown that the ALJ erred in this portion of her analysis.

### 2. The ALJ did not err with respect to the question of medical equivalence

Next, Claimant argues that the ALJ failed to conduct an equivalency assessment of Claimant's physical condition to determine if he possessed a condition that was medically equivalent to Listing 1.04. (Pl.'s Mem. at 9.) A Disability Determination and Transmittal form presents sufficient and substantial evidence to support an ALJ's step three determination because the form "conclusively establishes that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989)); 61 Fed. Reg. 34466. An ALJ "may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record." *Ribaudo*, 458 F.3d at 584.

Here, state agency reviewing physicians David Mack, M.D. and James Madison, M.D. determined that Claimant's condition did not medically equal any listed impairment. (R. 58-66, 67-77.) Both Drs. Mack and Madison completed and signed a Disability Determination and Transmittal form, which establishes that they considered the question of medical equivalence. (R. 66, 77.) No treating, consulting or reviewing physician opined otherwise. Substantial evidence, therefore, supports the ALJ's determination, and the ALJ reasonably concluded that Claimant's impairments do not meet or medically equal a listed impairment. *See Scheck,* 357 F.3d at 703 (holding that a state agency physician's opinion that a claimant's condition did not medically equal a listed impairment constituted substantial evidence supporting an ALJ's step three analysis).

## B. Substantial Evidence Supports the ALJ's RFC Determination

Claimant next asserts that the ALJ's RFC determination was erroneous, arguing that: (1) the ALJ failed to give a function by function analysis or engage in a sufficient narrative discussion of Claimant's RFC; and (2) the ALJ failed to give good reasons for discounting the opinions of treating physician, Dr. Virchow. As addressed below, these arguments are unavailing.

### 1. The ALJ provides a sufficient narrative discussion of Claimant's RFC

RFC describes the "work-related activities [that] the claimant can perform despite her limitations." *Young v. Barnhart,* 362 F.3d 995, 1000–01 (7th Cir. 2004); Social Security Ruling ("SSR") 96–8p ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). In assessing RFC, the ALJ "must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at 7. The ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform . . . ." *Id.* Moreover, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

Claimant argues that the ALJ violated SSR 96–8p by neither performing a functional analysis nor providing the requisite narrative discussion. (Pl.'s Mem. at 9-10.) These arguments are without merit. As a preliminary matter, SSR 96–8p does not require an ALJ to "articulate a claimant's RFC on a function-by-function basis." *Amey v. Astrue,* 2012 WL 366522, at *12 (N.D. Ill. Feb. 2, 2012) ("Although an ALJ is required to consider [a claimant's physical and mental ability to carry out work], remand is not required merely because an ALJ fails to state his findings in the item-by-item manner Plaintiff claims."); *see Knox v. Astrue,* 327 Fed. Appx. 652, 657 (7th Cir. 2009). Rather, the ALJ is required to *consider*—but not to articulate—the RFC on a function-by-function basis. *Knox v. Astrue,* 572 F.Supp.2d 926, 939 (N.D. Ill. 2008) (citing *Lewis v. Astrue,* 518 F.Supp.2d 1031, 1043 (N.D. Ill. 2007)), *aff'd,* 327 Fed. Appx. 652 (7th Cir.2009). An ALJ satisfies the "discussion requirements by analyzing the objective medical evidence, [the claimant's testimony and credibility] . . . and other evidence." *Knox,* 327 Fed. Appx. at 657-58.

Contrary to Claimant's assertions, the ALJ did provide a narrative discussion analyzing the objective medical evidence, the opinion evidence, and Claimant's subjective symptom allegations. (R. 15-18.) The ALJ's assessment of Claimant's RFC reasonably adopted the

restrictions assessed by state agency medical consultants, Drs. Mack and Madison, except that the ALJ, in consideration of the opinion of treating orthopedist, Christopher J. Bergin, M.D., also assessed that Claimant would be limited to more than occasional twisting at the waist. (R. 16, 62-63, 72-74, 261.) Claimant does not indicate what additional restrictions should have been included. The ALJ discussed the medical opinions she adopted in the context of Claimant's medical history, and she also considered Claimant's testimony. The ALJ provided a logical bridge from the medical evidence with detailed reasons for her conclusions, and the ALJ's narrative analysis was sufficient to detail her finding that Claimant's was not disabled.

### 2. The ALJ sufficiently explained the weight she gave to treating physician Dr. Virchow

Next, Claimant argues that the ALJ did not give good reasons for rejecting the opinions of his primary care physician, Dr. Virchow. (Pl.'s Mem. at 11-13.) The Court disagrees. Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c).[2] Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. When an ALJ decides not to give controlling weight to a claimant's treating physician, the ALJ must provide a sound explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); 20 C.F.R. §

---

[2] Amendments to the regulations were published on January 18, 2017, Federal Register, Vol. 82, No. 11, page 5844-84. https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00455.pdf#page29. Since the amendments only apply to claims filed on or after March 27, 2017, all references to the regulations in this opinion refer to the prior version.

404.1527(c)(2) ("We will always give good reasons in our ... decisions for the weight we give your treating source's opinion.").

Even when an ALJ provides good reasons for not giving controlling weight, she still must determine and articulate what weight, if any, to give the opinion. *Scott v. Astrue*, 647 F3d 734, 740 (7th Cir. 2011). In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss*, 555 F.3d at 561. If she does not discuss each factor explicitly, the ALJ should demonstrate that she is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013).

In this case, the ALJ determined that Dr. Virchow's medical opinions warranted "no significant weight" for a number of reasons: (1) Dr. Virchow is "a primary care physician, and not an orthopedic specialist;" (2) "[n]o treating orthopedic specialist has opined that the claimant has such dramatic limitations;" (3) the restrictions given by Dr. Virchow "are not consistent with the abilities and limitations that were demonstrated during the FCE;" (4) Dr. Virchow's opinions are "somewhat contradictory and not supported by his own progress notes;" and (5) "[t]he presence or absence of disability in Social Security disability claims is a determination reserved to the Commissioner." (R. 17.)

Claimant does not address most of the ALJ's reasons for not giving controlling weight to Dr. Virchow's opinions such as Dr. Virchow's lack of specialization, that no treating orthopedic

specialist opined to such extensive limitations, or that Dr. Virchow's restrictions are not supported by the FCE. Claimant only addresses two alleged errors in the ALJ's reasoning. First, Claimant faults the ALJ for noting that there was a contradiction between Dr. Virchow's finding that Claimant could not sit for more than ten minutes at a time and his determination in the same opinion that Claimant was able to drive. (Pl.'s Mem. at 11.) Claimant argues that "[t]hese positions are not necessarily inconsistent." (*Id.*) It is hard for this Court to see the consistency between an ability to drive (for more than ten minutes at a time) and an inability to sit for more than ten minutes. The ALJ was entitled to rely on an internal inconsistency in Dr. Virchow's opinion as one reason to discount that opinion. *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Second, Claimant argues that, contrary to the ALJ's assertion, Dr. Virchow did not opine that Claimant was disabled. (Pl.'s Mem at 12.) However, the ALJ correctly noted that Dr. Virchow concluded on multiple occasions that Claimant is "temporarily disabled," (R. 310, 316, 367, 373), and that a finding of disability is reserved solely for the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

The ALJ followed the regulations set forth in 20 C.F.R. § 404.1527 and evaluated the medical records to determine that Dr. Virchow's medical opinions warranted no significant weight, as they were internally inconsistent, not supported by the FCE or by the opinions of Claimant's treating orthopedic surgeons, and that they deserved less weight because Dr. Virchow was a general practitioner and not a specialist. (R. 17.) *See also Elder,* 529 F.3d at 414–16 (finding that ALJ properly discounted treating physician's opinion because he was not a specialist and failed to conduct a thorough examination to substantiate his opinion); *Skarbek,* 390 F.3d at 503 (finding an ALJ may discount a treating physician's opinion if the opinion "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion

is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability") (internal quotations and citations omitted). Moreover, the ALJ correctly pointed out that Dr. Virchow's disability finding is not controlling because that is an issue reserved solely for the Commissioner. *See* 20 C.F.R. § 404.1527(d). As such, the Court finds that the ALJ "sufficiently accounted for the factors in 20 C.F.R. § 404.1527 . . . and built an 'accurate and logical bridge' between the evidence and her conclusion." *Schreiber*, 519 Fed. Appx. at 959.

## C. The ALJ's Evaluation of Claimant's Subjective Symptom Statements Is Not Patently Wrong

Claimant's final argument is that the ALJ erred in evaluating his subjective symptom statements. As an initial matter, since the ALJ issued her decision in this case, the Social Security Administration ("SSA") issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. Social Security Ruling 96-7p and its focus on "credibility" has been superseded by SSR 16-3p. 2016 WL 1119029, at *1. The new SSR directs ALJs to focus on the "intensity and persistence of [the applicant's] symptoms" rather than on "credibility." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.") Because SSR 16-3p is simply a clarification of the SSA's interpretation of existing law, rather than a change to it, this new ruling applies to Claimant's argument in this case. *See Quails v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016).

The new SSR still requires the ALJ to consider familiar factors in evaluating the intensity, persistence and limiting effects of a claimant's symptoms such as testimony, objective medical treatment, medication and its side effects, daily activities etc. *See* SSR 16-3p, 2016 WL 1119029, at *4-**7,** citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ need not mention every piece of evidence in her opinion. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). But an ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts by ignoring evidence that points to a disability finding. *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010). Moreover, an ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The Court will not overturn an ALJ's credibility determination unless it is "patently wrong." *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). A credibility determination is patently wrong when it "lacks any explanation or support." *Elder*, 529 F.3d at 413. The patently wrong standard is "extremely deferential" to an ALJ's credibility determination. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

Here, the ALJ noted that "the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 16.) Claimant argues that the ALJ relies on the statement "reasons explained in this decision" without providing clear examples; and that the ALJ fails to "specify which statements, attributed to plaintiff, demonstrated that he was attempting to mislead." (Pl.'s Mem. at 13-14.) However, contrary to Claimant's assertions, the ALJ did provide reasons and examples for finding Claimant's symptom statements "not entirely credible." First, the ALJ explained that she found Claimant's allegations "inconsistent with and not well supported by the

objective medical findings in the record and therefore not entitled to significant weight." (R. 17-18.) Specifically, the ALJ noted:

> Repeat imaging of the cervical and lumbar spine showed no significant stenosis and 'mild' degenerative changes throughout the cervical and lumbar spine. Based, upon the findings of the MRI of the lumbar spine, Dr. Bergin could not explain the claimant's leg pain, and he felt that surgery was not warranted.

> The claimant has indicated that sitting is an aggravating factor, but he has displayed no neurologic deficits on examination, he has normal sensation, reflexes, and coordination, and muscle strength is 5/5, with negative straight leg raising.

(R. 16, citations omitted.) Further, the ALJ indicated that the FCE submitted prior to the hearing "reflects minor inconsistency with regard to the reliability and accuracy of [Claimant's] reports of pain and disability." (*Id.*) As examples, the ALJ noted that during the FCE, Claimant "lifted floor to waist, despite his claims that he could not do this," and that "[Claimant] testified that he tries not to lie down, but he then reported that he lies does 5% of the day at 15 minute intervals." (*Id.*)

Without acknowledging any of these specific reasons and examples provided by the ALJ, Claimant himself fails to discuss any inconsistencies and details which he believes the ALJ improperly considered. Rather, Claimant vaguely argues "[s]ince the ALJ left out of her consideration a great deal of the medical evidence as previously noted, . . . she obviously did not concentrate on the consistencies between Plaintiff's statements and the medical record." (Pl.'s Mem. at 13-14.) Yet, an ALJ is not required to "specifically address every piece of evidence" as long as she builds a logical bridge from the evidence to her conclusion. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). As the Seventh Circuit has regularly held, "[r]eviewing courts . . . should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Here, the ALJ sufficiently

articulated "the reasons explained in this decision" and supported her credibility determination. Accordingly, the ALJ's evaluation of Claimant's subjective symptom statements is not patently wrong.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 25] is denied, and the Commissioner's motion [ECF No. 35] is granted. The decision of the Commissioner is affirmed.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 2, 2017